# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DAVID L. CLEMENTS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION 05-0209-WS-M |
| | ) |
| C. DEAN PRESTON, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

This matter comes before the Court on defendant C. Dean Preston's Motion to Dismiss and/or Stay and to Compel Arbitration (doc. 6). The Motion has been briefed and is ripe for disposition at this time.

**I.    Background.**

According to the Complaint and its attached exhibits, plaintiff David L. Clements ("Clements") and defendant C. Dean Preston ("Preston") entered into a Brokerage Purchase and Sales Agreement (the "Agreement") dated March 7, 2005. In that Agreement, Preston agreed to purchase the vessel "Nancy Lea," described as a 1987 31-foot Tiera Open (the "Vessel"),[1] from Clements for the sum of $99,000. (*See* Complaint, at Exh. A.)[2]

Two provisions of that Agreement are of particular relevance to the present Motion. Paragraph 17 is an arbitration clause, which provides that "all claims, demands, disputes, and controversies of

---

[1]    The Complaint and plaintiff's affidavit repeatedly identify the Vessel as the "Lady Faye"; however, the transaction documents and other materials in the court file unequivocally refer to it as the "Nancy Lea." The Court assumes that the discrepancy is the result of scriveners' errors and that, whatever the actual name of the Vessel may be, there is but one Vessel in dispute in this action.

[2]    A fully executed copy of the Agreement was appended to the Complaint as Exhibit A; unfortunately, that copy is largely illegible because it appears to be a third- or fourth-generation facsimile. Preston subsequently filed a clean, legible copy of said Agreement. (*See* doc. 16.) Although the clean copy is unsigned, the parties apparently do not dispute that it is a true and accurate copy of the Agreement that they executed.

every kind or nature that may arise between [the parties] pertaining to the vessel ... shall be settled by binding arbitration." (Agreement, ¶ 17.) The clause further explains, "it is the intention of the [parties] to resolve by binding arbitration all disputes between them concerning the vessel ... [and] the terms and meaning of any of the documents signed or given in connection with negotiations pertaining to the transaction." (*Id.*) Additionally, Paragraph 5 of the Agreement specifies that if after acceptance of the vessel, "the Buyer fails to pay the balance of the purchase price and execute all papers necessary to be executed by the Buyer for the completion of this purchase on or before March 17, 2005 ... the parties shall be relieved of all obligations under this agreement." (*Id.*) The record reflects that Preston (as buyer) signed an Acceptance of Vessel in which he accepted the Vessel in accordance with the Agreement on March 7, 2005, subject to the contingencies that the radar be functional and that the sale be closed by March 17, 2005. (*See* Complaint, at Exh. B.)

According to the Complaint, the closing did not go forward on March 17, 2005; rather, on the designated closing date Preston requested from Clements a one-week extension of the closing and submitted paperwork designed to effectuate same.[3] On March 22, 2005, Clements responded to Preston's request for extension of the closing date with a handwritten letter cancelling the transaction on the grounds that Clements had decided not to part with the Vessel after all. (Plaintiff's Exh. E (doc. 10).)[4]

Apparently in the face of escalating tensions between the parties concerning the interpretation, force and effect of the Agreement, as well as the fate and status of the Vessel, Clements initiated the

---

[3] Preston insinuates that he was not to blame for the closing's failure to proceed on time, inasmuch as he had obtained financing and had completed all necessary items. (Reply Brief (doc. 17), ¶ 2.) According to Preston, the delay in the closing occurred because Clements "would not provide payoff information in a sufficient time for the contract to close." (*Id.*, ¶ 1.) Preston offers no exhibits, affidavits or other evidence in support of this contention. Furthermore, Preston does not suggest that he ever tendered payment on or before March 17, 2005 or that he otherwise attempted to fulfill his duties under Paragraph 5 of the Agreement on or before the specified deadline.

[4] Clements' March 22 letter did not mention Preston's failure to close on March 17 as a basis for canceling the transaction. Instead, he indicated, "I have changed my mind on selling the boat," stated that he was "going to keep the boat for another season," and apologized for any inconvenience. (Plaintiff's Exh. E.)

instant action on April 7, 2005.  As set forth in the Complaint, Clements seeks declaratory and injunctive relief authorizing him to rescind the never-consummated sale of the Vessel, deeming the Agreement expired, enjoining any attempt by Preston to arrest the Vessel, declaring that Clements may dispose of the earnest money deposit (totaling $9,600) as he sees fit,[5] and prohibiting Preston from recording a bill of sale or other documents purporting to transfer title to the Vessel from Clements to Preston.

Preston has now filed a Motion to Dismiss and/or Stay and to Compel Arbitration (doc. 6) alleging that the subject matter of the Complaint falls within the all-inclusive arbitration clause found at Paragraph 17 of the Agreement.  On this basis, Preston asks the Court either to dismiss the Complaint without prejudice or to stay this action pending arbitral proceedings.

**II.     Analysis.**

   **A.     *Legal Standard for Motion to Compel Arbitration.***

The strong federal preference for arbitration of disputes expressed by Congress in the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, must be enforced wherever possible.  *See Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1258 (11th Cir. 2003).  However, notwithstanding this federal policy favoring arbitration, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (citation omitted).  A district court must undertake a two-step inquiry when considering a motion to compel arbitration.  Its first task "is to determine whether the parties agreed to arbitrate that dispute," a determination made by reference to the "federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (citations omitted).  Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.  *Id.*  If the court determines that the parties did agree to

---

[5]     This portion of the *ad damnum* clause is perplexing because Clements avers in his affidavit that he returned the deposit to Preston.  (Clements Aff., ¶ 5.)  This inconsistency may be left for another day.

arbitrate the dispute in question, then the second step is to consider "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* at 628.

In determining whether the parties agreed to arbitrate a particular dispute, courts consider: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute in question falls within the scope of that agreement. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). In addressing these questions, courts apply state law principles relating to ordinary contract formation and interpretation, construed through the lens of the federal policy favoring arbitration. *See Young v. Jim Walter Homes, Inc.*, 110 F. Supp.2d 1344, 1346 (M.D. Ala. 2000) (citing *Perry v. Thomas*, 482 U.S. 483, 492 n.9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)). Under Alabama law, arbitration agreements are enforceable where they are voluntarily entered into and are contained in contracts involving interstate commerce. *See Old Republic Ins. Co. v. Lanier*, 644 So.2d 1258, 1260 (Ala. 1994). Furthermore, "[w]hen deciding whether parties agree to arbitrate a certain matter (including arbitrability), courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Oakwood Mobile Homes, Inc. v. Barger*, 773 So.2d 454, 459 (Ala. 2000) (citations omitted).

### B.     *Application of Legal Standard*

Clements does not maintain that he did not sign the Agreement, that his signature was fraudulently or involuntarily obtained or that the requisite nexus to interstate commerce is lacking. As such, the arbitration provision is valid and enforceable under Alabama law, and the starting point of the Court's analysis is whether the parties' dispute falls within the scope of that arbitration provision. Clements' Reply Brief in Opposition to Arbitration (doc. 11) submits four arguments that he claims are dispositive of those matters. The Court will address each of his assertions in turn.

First, Clements maintains that Preston has not complied with Local Rule 7.1 because there was no brief filed with the motion. Clements is correct that Local Rule 7.1(a) requires that any Rule 12(b) motion be accompanied by a brief. Nonetheless, this contention is facially meritless, inasmuch as Preston's brief (such as it was) was incorporated in the Motion itself, and nothing in LR 7.1(a)

mandates that a brief be filed as a separate document from the motion.[6]

Second, Clements asserts that the Motion for arbitration is deficient because there is no showing that venue is proper in south Florida. This objection can be readily resolved by the face of the Agreement, Paragraph 17 of which includes a forum selection clause through which Clements expressly agreed to arbitrate disputes arising under the Agreement in Broward County, Florida.[7]  Under Alabama law, forum selection clauses are enforceable "so long as enforcement is neither unfair nor unreasonable under the circumstances of the case." *Ex parte Procom Services, Inc.*, 884 So.2d 827, 831-32 (Ala. 2003). The party challenging enforcement of such a clause bears the burden of "clearly establishing" the requisite unfairness or unreasonableness. *Id.* Clements having done neither, the forum selection clause will be honored and his objection that arbitration would take place in an "improper venue" is meritless.

Third, Clements opposes arbitration on the ground that the Paragraph 17 requires arbitration only as to "negotiations leading to the sale," "aspects of the vessel," or "meaning of any of the documents signed," and not "to the unsigned request for extension" that he contends lies at the heart of this dispute. (Plaintiff's Brief, at 3.) This argument is also insufficient because it would too narrowly circumscribe the arbitration clause and effectively excise certain portions of same. Notwithstanding Clements' efforts to constrict the arbitration clause's scope to pre-sale negotiations, "aspects of the vessel" or interpretation of signed documents, Paragraph 17 extends well beyond those enumerated categories of disputes to embrace "all claims, demands, disputes or controversies of every kind or nature that may arise between them concerning all transactions between them pertaining to the vessel."

---

[6]      That said, the Court recognizes that Preston's barebones, two-page Motion and Supporting Brief (doc. 6) consists of a verbatim block quotation of Paragraph 17 of the Agreement, a vague citation to a single case, and (at most) three sentences of conclusory argument in favor of arbitration. Characterizing this submission as a "brief" stretches that term to the limits of any plausible interpretation of same; nonetheless, the Court will construe Preston's filing as a "brief" for purposes of compliance with Local Rule 7.1(a).

[7]      Indeed, Paragraph 17 states in pertinent part that, "Buyer, Seller, and Broker agree that the arbitration proceedings to resolve all disputes shall be conducted in Broward County in the state of Florida." (*Id.*)

(Agreement, ¶ 17.) In stressing certain limited categories of disputes identified in Paragraph 17, Clements conveniently ignores the phrases "including, but not limited to" and "[w]ithout limiting the generality of the foregoing" which preceded the recitation of those specific categories in the arbitration clause. Unquestionably, the arbitration agreement incorporates all disputes and claims of any kind or nature that arise pursuant to the Agreement. Clements' attempt to confine the arbitration clause to only certain discrete kinds of disputes relating to the transaction is unavailing.

Even though Clements' first three proffered justifications for denial of the Motion lack luster, he arrives at the correct conclusion in his fourth ground for opposition. In particular, Clements asserts that the expiration of the Agreement on March 17, 2005 precludes arbitrability of this dispute, which arose post-expiration.[8] As noted *supra*, Paragraph 17 of the Agreement states in unambiguous terms that the parties agreed to submit all disputes arising between them and relating to the underlying Vessel transaction to binding arbitration. However, the arbitration clause cannot be read in a vacuum but rather must be construed in conjunction with the remainder of the Agreement. In particular, Paragraph 17 must be read together with those sections of the Agreement providing for a March 17, 2005 closing date. Succinctly put, the critical question is what effect the arbitration clause had after that closing date. The answer lies in a common-sense construction of adjoining provisions of the Agreement.

Under Paragraph 5, if after executing an acceptance of vessel Preston failed to pay the balance of the purchase price and execute all papers for completion of the transaction on or before March 17, 2005, "the parties shall be relieved of all obligations under this agreement." (Agreement, ¶ 5.) The record reflects that (a) Preston had signed the Acceptance of Vessel on March 7, 2005; and (b) Preston failed to complete the agreed payments on or before March 17, 2005. As such, the full force and effect of the Agreement expired as of March 17, 2005, by straightforward application of Paragraph 5. Under any reasonable interpretation, "all obligations under this agreement" must necessarily include

---

[8] Neither party's treatment of the contract expiration issue has substantially assisted the Court in ruling on the Motion. Although he identifies the issue, Clements offers no textual analysis of the Argument to support his position that it was expired, eschewing contract interpretation in favor of sweeping generalities and a distinguishable discussion of collective bargaining agreements. Meanwhile, Preston's briefs unhelpfully sidestep this question altogether.

the obligation to arbitrate pursuant to Paragraph 17.[9]  Thus, the effect of Preston's failure to pay the balance of the purchase price and complete the sale on or before March 17, 2005 was that all of the parties' obligations under the Agreement, including the obligation to arbitrate disputes arising thereafter, were of no further force and effect.  Stated differently, the expiration clause of Paragraph 5 trumps Paragraph 17 because the obligation to arbitrate necessarily falls under the heading of "all obligations under this agreement," which are cancelled by operation of Paragraph 5.  No other reading of Paragraphs 5 and 17 makes sense.  In any event, Preston has not suggested any viable reconciliation or conjoining interpretation between the arbitration provision at Paragraph 17 and the expiration clause at Paragraph 5 that would enable the arbitration duty to survive, and it is not incumbent on this Court to develop or articulate his arguments for him.[10]

At most, Preston hints (without actually asserting) in his reply brief that Paragraph 5 should not apply here because it was Clements' fault that the closing did not happen as scheduled.  But nothing in Paragraph 5 states that the buyer's nonperformance must be attributable to dilatoriness, error or fault

---

[9]  To interpret the two paragraphs otherwise would be either to impute qualifying language that the parties did not include in their Agreement or improperly to ignore the plain "all obligations" language of Paragraph 5 in order to favor Paragraph 17.  The Court will not engage in such an exercise.  *See, e.g., Federal Land Bank of New Orleans v. Terra Resources, Inc.*, 373 So.2d 314, 320 (Ala. 1979) (in contract interpretation, "terms should be construed in pari materia and a construction adopted which gives effect to all the terms used"); *Vesta Fire Ins. Corp. v. Liberty Nat. Life Ins. Co.*, 893 So.2d 395, 405 (Ala.Civ.App. 2003) (reaffirming well established contract interpretation principles that words of a contract must be given ordinary meaning and that courts must use all efforts to reconcile contractual provisions).  Significantly, this reading does not do violence to Paragraph 17, which continues to be an "all-inclusive" arbitration clause so long as the Agreement has not expired.  But if the Agreement has expired, then Paragraph 5 declares that the parties have no obligation to do anything, so the obligation to arbitrate must expire just like every other obligation set forth in the Agreement.

[10]  The law is clear that "the onus is upon the parties to formulate arguments." *Lyes v. City of Riviera Beach, Fla.*, 126 F.3d 1380, 1388 (11th Cir. 1997); *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it"); *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp.2d 1228, 1236 (M.D. Ala. 2000) ("[i]t is not for the court to manufacture arguments on Plaintiff's behalf").

on the part of the buyer in order to trigger the expiration clause.  Under Paragraph 5, the buyer's failure to close on March 17, 2005 terminates the Agreement, irrespective of the reason for that failure.  Besides, no evidence suggests that Preston ever tendered performance on or before March 17, 2005, but the record does show that it was Preston who asked to extend the closing date.  There is no basis for the Court to find that Preston took all reasonable steps to perform in accordance with Paragraph 5, even if such a finding were relevant to interpretation of Paragraph 5.  In short, Preston has come forward with neither evidence nor credible argument that the circumstances of this case removed it from the expansive ambit of the expiration provisions of Paragraph 5 of the Agreement.

Notwithstanding the federal policy favoring arbitration, the law is well-settled that arbitration is a matter of contract and that no party can be required to arbitrate a dispute which he has not agreed to arbitrate.  *See MS Dealer*, 177 F.3d at 947.  This is precisely the case here.  The Agreement excluded from arbitration any disputes arising after March 17, 2005 if Preston had failed to pay the full purchase price by that date.  Had the parties wished to carve out an exception to Paragraph 5 that would have allowed the arbitration clause to survive expiration, they could have done so.  Their decision not to bound the sweeping language of Paragraph 5 in that manner reinforces the Court's determination that, as a matter of straightforward contract interpretation, claims and disputes arising after the March 17, 2005 closing date were not intended to be subject to the arbitration clause.  The Court has no authority to rewrite or ignore the terms of the Agreement.  Had the closing taken place as scheduled on March 17, 2005, the Agreement and the arbitration clause would have extended beyond the closing date to ensure the performance of all parties involved and any ensuing disputes would be ripe for arbitration.  However, because the Agreement had by its own terms expired and relieved all parties from all obligations thereunder, the Court's enforcement of the arbitration clause in these circumstances would effectively amount to extension of the arbitration clause beyond the boundaries to which the parties had agreed.

### III.  Conclusion.

For all of the foregoing reasons, the Court finds that the arbitration provision did not survive expiration of the Agreement on March 17, 2005.  Because this dispute did not arise until March 22,

2005, it lies beyond the scope of arbitrable disputes under the Agreement. Accordingly, the Defendant's Motion to Dismiss and/or Stay and to Compel Arbitration and Supporting Brief (doc. 6) is **denied**. This action will proceed in this District Court. To facilitate that endeavor, defendant is **ordered** to file an answer on or before **August 12, 2005**. Moreover, in accordance with the Order (doc. 22) entered by the Court on July 8, 2005, defendant's response to the pending Motion for Summary Judgment is due no later than **August 29, 2005**, and plaintiff's reply brief must be filed on or before **September 12, 2005**.

DONE and ORDERED this 29th day of July, 2005.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE