IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DAVID L. CLEMENTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 05-0209-WS-M |
| ) | |
| C. DEAN PRESTON, ) | |
| ) | |
| Defendant. ) | |

# ORDER

This matter is before the Court on the parties' competing Motions for Summary Judgment (docs. 12 & 32). The Motions have been briefed and are ripe for disposition at this time.

**I.    Background.**

On or about March 7, 2005, plaintiff David L. Clements ("Clements") and defendant C. Dean Preston ("Preston") entered into a Brokerage Purchase and Sales Agreement (the "Agreement"). Pursuant to that Agreement, Preston agreed to purchase a 1987 31-foot Tiara Open motor yacht (the "Vessel") from Clements for the sum of $99,000.[1] Concurrently with the execution of the Agreement, Preston paid $9,600 in earnest money to Clements and/or a broker, nonparty Gulf Coast Hatteras (the "Broker"). The Agreement provided, *inter alia*, that Preston was to pay the balance of the purchase price on or before March 17, 2005 and that if he failed to do so, then Clements and the Broker would be entitled to retain the earnest money as liquidated and agreed damages "and the parties shall be relieved of all obligations under this agreement." (Agreement, ¶ 5.) Clements even executed a Bill of Sale on March 16, 2005 to effectuate the transfer of the Vessel to Preston upon receipt of the remaining sale proceeds.

---

[1] The parties' exhibits interchangeably refer to the Vessel as the "Nancy Lea" and the "Lady Faye." Apparently, the Vessel's name was formally changed to the "Lady Faye" in 1999; however, Clements continued to refer to it as the "Nancy Lea" for purposes of the transactional documentation relating to the proposed 2005 sale of the Vessel.

The sale did not close on March 17, 2005 because Preston's lender lacked payoff information from Clements' lender for the outstanding First Preferred Ship Mortgage on the Vessel. The parties disagree as to who bears responsibility for that information not reaching Preston's lender in a timely fashion. Instead of closing on March 17, Preston caused the Broker to send Clements a written request to extend the closing date by one week, until March 24, 2005. On March 22, 2005, however, Clements transmitted a handwritten notice purporting to cancel the sale of the Vessel on the grounds that he had "changed [his] mind on selling the boat" and that he wanted "to keep the boat for another season." (Preston Decl., at Exh. D.) Clements' cancellation concluded with the statement, "Please bill me for any expenses to date." (*Id.*)

Amidst escalating tensions as to the parties' respective rights and obligations under the Agreement, Clements initiated the instant action for declaratory and injunctive relief in this District Court on April 7, 2005. The Complaint identifies two causes of action, to-wit: a claim for declaratory and injunctive relief concerning contract termination and/or arbitrability, and a claim for declaratory and injunctive relief concerning contract rescission. Clements asks this Court to declare, *inter alia*, that he has no continuing obligation to sell the Vessel to Preston, that Clements was entitled to cancel the sale of the Vessel because the Agreement had expired, and that Clements may dispose of Preston's $9,600 earnest money deposit as he sees fit. In an Answer and Counterclaim (doc. 24) filed on August 12, 2005, Preston asserted a claim against Clements for breach of contract, alleging that Clements' last-minute, capricious change of heart constituted a breach of his contractual obligation to Preston to proceed with the sale. Preston seeks "all compensatory damages plus attorneys fees and costs" arising from the alleged breach, but does not request specific performance of the Agreement. (Counterclaim, ¶ 3.)

The battle lines having thus been drawn, the parties submitted dueling dispositive motions.[2] The gravamen of Clements' position is that the undisputed evidence shows that the

---

[2] Preston also filed a Motion to Dismiss and/or Stay and to Compel Arbitration (doc. 6), requesting that this action be referred to arbitration pursuant to Paragraph 17 of the Agreement. On July 29, 2005, the undersigned entered an Order (doc. 23) denying Preston's motion because the instant action is outside the scope of the applicable arbitration provision. In particular, the Court found that the expiration clause set forth in Paragraph 5 of the Agreement was triggered by Preston's failure to complete the sale on March 17, 2005, and that the resulting expiration of the Agreement foreclosed any subsequent attempt to enforce Paragraph 17.

Agreement expired by its terms on March 17, 2005; that Preston had not fulfilled his contractual obligations in a timely manner; and that Clements was therefore within his rights to deny the requested extension and cancel the transaction. By contrast, Preston's position is that Clements violated his obligations under the Agreement by not holding clear title to the Vessel and by failing or refusing to provide his lender payoff information to Preston's lender in a manner that would facilitate timely consummation of the closing. Both parties have submitted affidavits and exhibits to buttress their respective stances.[3]

## II.   Subject Matter Jurisdiction.

Antecedent to broaching the merits of the Rule 56 Motions, the Court must satisfy itself that it possesses the requisite subject matter jurisdiction to do so, notwithstanding the parties' failure to identify any jurisdictional deficiency in the Complaint.

It is well settled that federal courts have limited subject matter jurisdiction. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1260-61 (11th Cir. 2000); *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). Specifically, lower federal courts can hear only cases for which Congress has granted them jurisdiction. Once a federal court determines that no grant of jurisdiction applies in a particular case, it must immediately dismiss that action for want of jurisdiction. *See Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001); *Morrison*, 228 F.3d at 1261; *University of South Alabama*, 168 F.3d at 409-10.

Because federal courts have such narrowly circumscribed jurisdiction, this Court bears an affirmative duty to inquire *sua sponte* whenever it appears that subject matter jurisdiction may be lacking. *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) (noting that "a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may

---

[3] Preston's submission outlines the following expenses for which he seeks reimbursement and which he contends Clements has refused to pay him: (a) $459 for survey; (b) $50 for removal of Vessel for inspection; (c) $5,850 in legal fees; and (d) $1,000 for arbitration. The last of those items is perplexing, inasmuch as this action has never been referred to arbitration; to the contrary, the undersigned rejected Preston's request to compel arbitration. Preston also identifies the $9,600 escrow deposit, which he acknowledges has been reimbursed to him by Clements. (Additional Declaration of Preston, ¶¶ 2-3; Defendant's Brief in Support of Motion for Summary Judgment (doc. 33), at 6.)

be lacking"); *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) ("[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises."); *Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises."). Indeed, as the Eleventh Circuit has explained, "[t]he jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case, and cannot be waived or otherwise conferred upon the court by the parties. Otherwise, a party could work a wrongful extension of federal jurisdiction and give district courts power the Congress denied them." *University of South Alabama*, 168 F.3d at 410.[4]

In his Complaint, Clements invokes two types of federal subject matter jurisdiction, including diversity of citizenship pursuant to 28 U.S.C. § 1332, and admiralty/maritime jurisdiction pursuant to 28 U.S.C. § 1333.[5] After careful review of the pleadings and pertinent authorities, the Court is of the opinion that neither basis for federal jurisdiction is applicable

---

[4] For that reason, the Court scrutinizes subject matter jurisdiction, notwithstanding defendant's apparently strategic decision not to contest it. Because jurisdictional defects cannot be waived, defendant's failure to raise them is of no import to the analysis. Nor does it matter that the undersigned has entered prior rulings in this action without directly verifying its jurisdictional pedigree. The burden to inquire about subject matter jurisdiction takes effect whenever a judicial officer senses doubt as to a case's jurisdictional foundation, irrespective of whether those doubts first arose (or could have arisen) at an earlier juncture.

[5] Clements also suggests that certain causes of action lie within this Court's "ancillary and/or pendent jurisdiction" (Complaint, ¶ 3), presumably pursuant to the supplemental jurisdiction provisions of 28 U.S.C. § 1367. Of course, supplemental jurisdiction cannot attach unless some independent basis for federal court original jurisdiction exists. As such, Section 1367 is not a stand-alone ground for jurisdiction, but presupposes the existence of some other form of original jurisdiction as to at least part of the dispute. Therefore, the Court need not and cannot reach the § 1367 issue unless it first finds that there is some aspect of this dispute as to which original federal subject matter jurisdiction attaches.

here.[6]

### A.    *Diversity Jurisdiction.*

In order to qualify for diversity jurisdiction pursuant to 28 U.S.C. § 1332, a complaint must establish "complete diversity of the parties' citizenship and an amount in controversy exceeding $75,000." *Darden v. Ford Consumer Finance Co.*, 200 F.3d 753, 755 (11th Cir. 2000). The requirement of "diversity" means that every plaintiff must be a citizen of a different state than every defendant. *See, e.g., Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant."). To invoke diversity jurisdiction, a plaintiff must affirmatively allege facts in the complaint showing that both prongs of § 1332 are satisfied. *See, e.g., Massey v. Congress Life Ins. Co.*, 116 F.3d 1414, 1418 n.1 (11th Cir. 1997) (for diversity jurisdiction to apply, plaintiff must allege proper jurisdictional basis in complaint, including that plaintiff and defendants are citizens of different states and that amount in controversy exceeds jurisdictional threshold); *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994) (finding no diversity jurisdiction where complaint failed to plead citizenship of defendant). Courts will not presume that the jurisdictional prerequisites under § 1332 are met. Rather, it is plaintiff's burden pursuant

---

[6] The Complaint does not separately allege federal question jurisdiction pursuant to 28 U.S.C. § 1331, independently of any maritime/admiralty claims within the ambit of § 1333. Any such assertion would have failed, given the plainly state-law character of the claims presented. "Under the 'well-pleaded complaint' rule, federal question jurisdiction only exists where an issue of federal law appears on the face of the complaint." *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 445-46 (3d Cir. 2003) (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 24, 77 L. Ed. 2d 420, 103 S. Ct. 2841 (1983)); *Michigan Southern R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002) (Section 1331 requires finding that "the plaintiff's cause of action was created by federal law, ... or if the plaintiff's claim is based on state law, a substantial, disputed question of federal law is a necessary element of the state cause of action"). That the Complaint requests declaratory judgment, presumably under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, is of no jurisdictional significance. *See, e.g.*, *Household Bank v. JFS Group*, 320 F.3d 1249, 1259 (11th Cir. 2003) ("[A] federal district court has subject-matter jurisdiction over a declaratory judgment action if, as here, a plaintiff's well-pleaded complaint alleges facts demonstrating the defendant could file a coercive action arising under federal law."); *Norman v. Southern Guar. Ins. Co.*, 191 F. Supp.2d 1321, 1326 n.1 (M.D. Ala. 2002) (explaining that Declaratory Judgment Act does not extend jurisdiction of federal courts and that jurisdiction may be exercised over declaratory judgment action only if some other jurisdictional ground exists).

to Rule 8, Fed.R.Civ.P., to proffer a short and plain statement establishing a basis for federal subject matter jurisdiction.

Here, the Complaint alleges that Clements is a citizen of Alabama and that Preston is a citizen of Florida, so complete diversity is satisfied.  (Complaint, ¶¶ 1-2.)[7]  However, complete diversity is not, in and of itself, sufficient to confer federal jurisdiction, and the Court must also find that the $75,000 jurisdictional amount in controversy threshold is met before diversity jurisdiction is authorized.  *See Morrison*, 228 F.3d at 1261 ("When jurisdiction is premised on the diversity of the parties, the court is obligated to assure itself that the case involves the requisite amount in controversy.").  Although the Complaint is silent as to the amount in controversy, Clements would apparently satisfy this requirement by pointing to the Vessel's $99,000 sale price in the Agreement.  But that is not the proper measure of the amount in controversy here.  "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective. ... In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted."  *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000); *see also Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (same); *Davis Tune, Inc. v. Precision Franchising, LLC*, 2005 WL 1204618, *2 (N.D. Fla. May 20, 2005) ("Stated differently, the value of requested injunctive relief is the amount the plaintiff would recover or avoid losing if the injunction was granted.").

Applying this standard to the case at bar, Clements is seeking only declaratory and

---

[7] Actually, the Complaint is phrased in terms of residency.  Citizenship, not residency, is the touchstone of a diversity analysis.  *See*, *e.g., McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) ("Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction."); *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 53 (1st Cir. 1992) (noting that "citizenship or domicile, not residence, is the basis of subject matter jurisdiction"); *Rayfield v. National Auction Group, Inc.*, 878 F. Supp. 203, 206 (M.D. Ala. 1995) ("it is a party's domicile rather than his residence which is determinative of citizenship for diversity jurisdiction"); *Chico v. Puerto Rico Elec. Power Authority*, 312 F. Supp.2d 153, 157 (D.P.R. 2004) ("Mere residence is insufficient to determine a party's jurisdictional status.").  It is incorrect to use the two terms interchangeably.  Nonetheless, the Court will assume without deciding that the residency designations affixed to the parties by the Complaint apply with equal force to their domicile and, hence, their citizenship.

injunctive relief, not monetary damages; therefore, jurisdiction hinges on the monetary value of the benefit that Clements stands to receive if the requested relief is granted. This value has nothing to do with the sales price of the Vessel. If Clements is successful, he will receive a declaration that the Agreement is expired and of no further effect. This means that he will not have to part with the Vessel, but it also means that he will not receive its $99,000 fairly negotiated sales price.[8] Absent some indication that the Vessel is worth drastically more than the agreed-upon price set by Clements and Preston via arm's-length dealings, the monetary value of such a declaration would likely be neutral from Clements' standpoint and could not conceivably approach the jurisdictional amount in controversy. There is no indication that, if forced to honor the Agreement, Clements could not acquire a comparable vessel with the sales proceeds from the Lady Faye. Nor is there any suggestion that Clements expected to use the Vessel for some income-generating purpose, such that he would suffer significant lost revenue if it were sold. Rather, the only apparent benefits that Clements seeks to glean from this lawsuit consist of: (a) the psychic value in fulfilling his stated desire to keep the Vessel for one more season, (b) the psychic value in knowing that his acrimonious dispute with Preston has been laid to rest once and for all, and (c) the value in potentially being able to recover all or part of the $9,600 earnest money deposit. Items (a) and (b) are far too speculative and immeasurable to satisfy the amount in controversy requirement, as the Court would not know where to begin in assessing their monetary benefit to Clements. *See Mitchell v. GEICO*, 115 F. Supp.2d 1322, 1327 (M.D. Ala. 2000) (observing that sometimes the full value of requested injunctive or declaratory relief is "too speculative and immeasurable to establish the requisite amount in controversy") (citing *Cohen*, 204 F.3d at 1077). As for item (c), it may confer a monetary benefit upon Clements; however, the value of that monetary benefit would constitute but a small fraction of the $75,000 minimum threshold. Thus, the only funds that Clements will recover or avoid losing if his

---

[8] By contrast, if Clements loses this case, Preston might possibly attempt to force Clements to complete the sales transaction. That compelled sale is not among the remedies requested by any party in this lawsuit, so it is not part of the relief that the Court may consider for jurisdictional purposes. Even if it were, the mere completion of the sale would not implicate the § 1332 amount in controversy. After all, Clements would lose the Vessel, but he would gain the $99,000 in sales proceeds that were negotiated and agreed upon by the parties via arm's-length bargaining.

requested relief is granted are the $9,600 security deposit, as well as the other minor items claimed by Preston in his Counterclaim.

The same conclusion attaches when one expands the jurisdictional inquiry to embrace Preston's Counterclaim for breach of contract, which alleges that Preston suffered unspecified damages when Clements violated the terms of the Agreement. In his summary judgment filings, Preston delineates the damages he seeks as including just over $500 in boat-removal and surveying costs, plus a $1,000 line item for arbitration costs (which seemingly should never have been incurred because this action was never referred to arbitration). Preston also lists the $9,600 earnest money deposit, but concedes that Clements has already returned it to him.[9] It is exceedingly clear that the type and magnitude of the monetary damages contemplated by the Counterclaim fall well shy of the $75,000 jurisdictional minimum under § 1332.

Simply put, this litigation is ultimately not about a $99,000 motor yacht. Neither side stands to gain or lose the value of the Vessel depending on the outcome of the case; to the contrary, at both the beginning and the end of this action, Clements will still hold the Vessel and Preston will still hold the monetary equivalent (according to the parties' own negotiations), some $99,000 in sales proceeds. No party is asking the Court to coerce the sale of the Vessel; instead, Clements requests a declaration that the Agreement to sell the Vessel has expired, and both sides seek award of the earnest money. Thus, the Vessel's value is not properly weighed in assessing

---

[9] Preston's filings suggest that he may also be seeking reimbursement of attorney's fees. In this Circuit, "[t]he general rule is that attorney's fees do not count towards the amount in controversy unless they are allowed for by statute or contract." *Federated Mutual*, 329 F.3d at 808 n.4; *see also Davis Tune*, 2005 WL 1204618, at *3 ("Attorney's fees are not normally considered a part of the amount in controversy because the successful party does not typically collect separate attorney's fees."). Neither of these contingencies is applicable here. As to the former, the Counterclaim implicates no statutes that might activate an attorney's fee obligation for Clements. As to the latter, scrutiny of the Agreement reveals that nothing therein would obligate Clements to pay Preston's legal bills in the event of a seller's breach, or vice versa. In fact, the only reference to attorney's fees in the text of the Agreement is a provision to protect the Broker, as Paragraph 13 obligates any breaching party to reimburse the Broker's attorney's fees should the Broker become ensnared in Agreement-related litigation. Because the parties can point to no statute allowing recovery of attorney's fees and nothing in the Agreement would mandate fee-shifting, the rule articulated in *Federated Mutual* forbids consideration of attorney's fees in assessing the amount in controversy.

the amount in controversy because the requested relief will not confer to either side a net monetary benefit even approaching that figure. By all appearances, the monetary question animating this action is which party is entitled to the $9,600 earnest money deposit. The reality is that the parties are primarily asking the Court to decide the fate of the deposit, as well as to rule on the recoverability of several low-dollar expense items and to resolve several other issues lacking in monetary import. In light of this analysis, the undersigned readily finds that the claims of Clements and Preston are for far less than the $75,000 jurisdictional amount prescribed by 28 U.S.C. § 1332.[10] Diversity jurisdiction cannot properly be exercised over this action.

### B.    *Admiralty Jurisdiction.*

In the absence of diversity jurisdiction, Clements' alternative justification for invoking a federal forum is that this action falls within this Court's admiralty and maritime jurisdiction, pursuant to 28 U.S.C. § 1333.

Admiralty jurisdiction "embraces all maritime contracts, torts, injuries, or offenses; and it depends, in cases of contract, upon the nature of the contract, and is limited to contracts, claims, and services purely maritime, and touching right and duties appertaining to commerce and navigation." *The Eclipse*, 135 U.S. 599, 608, 10 S.Ct. 873, 34 L.Ed. 269 (1890) (finding that "[t]here was nothing maritime" about intervenors' claims to enforce alleged contract of sale for a vessel, such that subject matter jurisdiction over the intervention was lacking); *see also United States v. Knauth*, 183 F.2d 874, 878 (5th Cir. 1950) (following *The Eclipse*).[11] *The Eclipse*'s "purely maritime" standard has been relaxed over time to allow admiralty jurisdiction as to

---

[10] Where, as here, the Complaint is silent as to the monetary value of the relief sought, the party seeking to invoke federal jurisdiction bears the burden of showing by a preponderance of the evidence that the jurisdictional minimum is satisfied. *See Federated Mut.*, 329 F.3d at 807 ("legal certainty" test gives way to preponderance standard where jurisdiction is based on indeterminate damages claim); *cf. Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1314 (11th Cir. 2002) (utilizing "legal certainty" test where complaint alleges an amount in controversy in excess of $75,000, such that federal jurisdiction lies unless court finds to a legal certainty that plaintiff cannot recover that amount); *Siren, Inc. v. Estes Express Lines*, 249 F.3d 1268, 1274 n.6 (11th Cir. 2001) (similar). Clements has not done so.

[11] All Fifth Circuit decisions handed down prior to the close of business on September 30, 1981, are binding precedent upon the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

"mixed" contracts (*e.g.*, those including both maritime and non-maritime elements) in certain circumstances.  *See Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.*, 413 F.3d 307, 314 (2nd Cir. 2005).  Nonetheless, the law is clear that, with respect to contract claims, admiralty jurisdiction exists only if the contract is maritime in nature, that is, if it "ha[s] reference to maritime services or maritime transactions."  *North Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 125, 39 S.Ct. 221, 63 L.Ed. 510 (1919).

In determining whether a contract is maritime in nature, it is not enough that the agreement relates to a ship; rather, maritime contracts are those concerning transportation by sea, those relating to navigable waters, and those concerning maritime employment.  *See Wilkins v. Commercial Inv. Trust Corp.*, 153 F.3d 1273, 1276 (11th Cir. 1998) ("A maritime contract in general is one whose subject matter is necessary to the operation, navigation, or management of a ship").[12]  Contracts for the sale of ships are outside the realm of maritime contracts, as a matter of law, and therefore are beyond federal admiralty jurisdiction.  Indeed, "[f]or almost a century, it has been 'elementary hornbook law' that a contract for the sale of a vessel does not come within the federal courts' admiralty jurisdiction."  *Smith v. Mitlof*, 198 F. Supp.2d 492, 499 (S.D.N.Y. 2002); *see also Gaster Marine Recovery & Sales, Inc. v. M/V The Restless I*, 33 F. Supp.2d 1333, 1334 (S.D. Fla. 1998) ("the Eleventh Circuit's law is 'firmly established' that a contract for the sale of a vessel is not within federal courts' admiralty jurisdiction"); *Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht, Hull No. 01*, 625 F.2d 44, 47 (5th Cir. 1980) (recognizing "well established general rule that admiralty will not entertain suits where the substantive rights of the parties flow from a contract to sell or construct a vessel"); *Richard*

---

[12] *See also Nehring v. Steamship M/V Point Vail*, 901 F.2d 1044, 1048 (11th Cir. 1990) (declaring that not every contract relating to a ship is considered maritime, but that contract must pertain directly to and be necessary for commerce or navigation upon navigable waters); *Richard Bertram & Co. v. Yacht Wanda*, 447 F.2d 966, 967 (5th Cir. 1971) ("The mere fact that a ship is involved will not bring the cause within the jurisdiction of the admiralty court."); *McAllister Towing & Transp. Co. v. Thorn's Diesel Serv., Inc.*, 163 F. Supp.2d 1329, 1334 (M.D. Ala. 2001) (to determine whether contract implicates admiralty jurisdiction, courts consider whether contract has reference to maritime service or maritime transactions); *Grand Banks Fishing Co. v. Styron*, 114 F. Supp. 1, 3 (D. Me. 1953) ("For a contract to fall within the admiralty jurisdiction, it must concern transportation by sea, relate to navigation, or maritime employment, or be one of navigation and commerce on navigable waters.") (citations omitted).

*Bertram & Co. v. Yacht Wanda*, 447 F.2d 966, 967 (5th Cir. 1971) ("the prevailing rule has been that a contract for the sale of a ship is not a maritime contract"); *Grand Banks*, 114 F. Supp. at 3 ("The rule is well settled that contracts for building or for selling a ship are not maritime contracts, and within the jurisdiction of admiralty.").

Based on the unequivocal authorities excluding ship sale agreements from the scope of admiralty and maritime law, the Court finds that the Agreement is not maritime in character. Given that determination, the instant dispute as to the parties' rights and obligations under the Agreement does not fall within the rubric of maritime law, and cannot trigger admiralty jurisdiction, as a matter of law. Accordingly, subject matter jurisdiction over this action cannot properly be interposed pursuant to 28 U.S.C. § 1333.

### III.    Conclusion.

The foregoing analysis conclusively establishes the federal subject matter jurisdiction over this action cannot validly be rooted in plaintiff's theories of diversity or admiralty jurisdiction. Moreover, federal question jurisdiction is demonstrably absent. At its core, this action may be fairly characterized as a state-law contract dispute as to which approximately $10,000 in earnest money / liquidated damages hangs in the balance, but little (if anything) else of monetary value is implicated. The proper forum for such claims is Alabama state courts, not federal district court. As such, the Court *sua sponte* determines that subject matter jurisdiction over this action is lacking. Because federal courts do not possess statutory authority to preside over this dispute, this action must be, and hereby is, **dismissed without prejudice** for want of federal jurisdiction.

DONE and ORDERED this 9th day of December, 2005.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE